IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| JAMES T. LOZEAU,<br><br>　　　　Petitioner<br><br>v.<br><br>CONFEDERATED SALISH AND<br>KOOTENAI TRIBES,<br><br>　　　　Respondent. | Cause No. CV 25-35-M-BMM<br><br><br>ORDER |

　　　　This matter comes before the Court on tribal pro se petitioner James T. Lozeau's request for habeas relief.  (Doc. 1.)  Lozeau seeks to challenge a judgment of conviction for Speeding and Obstruction handed down in the Tribal Court of the Confederated Salish and Kootenai Tribes ("CSKT") of the Flathead Reservation in Cause No. 22-0451-CR, and the appeal therefrom.  (*Id*. at 2-3); *see also*, (Doc. 1-1 at 5-11.)  Lozeau initially indicated he wished to proceed under 28 U.S.C. § 2255.  (*Id*.)

　　　　In a prior order, Lozeau was advised that 28 U.S.C. § 2255 is a mechanism federal prisoners may use to challenge the judgment of conviction or modify their sentence.  (Doc. 3 at 1-2.)  Because Lozeau is a tribal prisoner and is not challenging a judgment out of this Court, he was advised that § 2255 is inapplicable to him.  Similarly, 28 U.S.C. § 2254 applies to persons "in custody

1

pursuant to the judgment of a State court." The Tribes are not a State; therefore, Lozeau was advised that this Court does not have jurisdiction over his claims under Section 2254. (*Id*. at 2.)

Lozeau was advised that he potentially could proceed under the Indian Civil Rights Act ("ICRA"), codified at 25 U.S.C.A. § 1303. But he was informed he would need to provide additional information, in the form of an amended petition, before the Court could determine if the ICRA applied to Lozeau's claims. (*Id*. at 2-3.) Lozeau was provided with the Court's standard form and advised that if he wished to proceed, he should file an amended petition within 21 days. (*Id*. at 3-4.)

Lozeau timely responded, although he did not utilize the form as instructed. *See*, (Doc. 4.) Lozeau acknowledges that he filed his initial petition on the § 2255 form, but now explains he is not seeking habeas corpus as he has already served his tribal court sentence. (*Id*. at 2.) He alleges he was denied the opportunity to challenge the tribal appellate court's verdict, in violation of his tribal constitutional rights and the due process clause of the Fourteenth Amendment. (*Id*.) Lozeau then refers back to his original filing and asks this Court to take judicial notice of the arguments advanced there. (*Id*.)

This Court lacks jurisdiction over Lozeau's filing, whether construed as a § 2254 petition or a § 2255 petition; he is not challenging a state or federal sentence. Moreover, Lozeau apparently is no longer seeking habeas relief. The fact that he

did not receive a favorable outcome in the tribal appellate court does not automatically confer jurisdiction upon this Court. But even if this Court were to consider the claims in federal habeas, Lozeau fails to establish a federal constitutional violation.

In his initial filing, Lozeau asserted that the State of Montana does not have jurisdiction over tribal members on the Flathead Reservation under PL 83-820. (Doc. 1 at 3.) In the cover page to the exhibits attached to his original petition, Lozeau asserts that he should be under federal jurisdiction and federal law "the same as all other Reservations in Montana." (Doc. 1-1 at 1.) Lozeau then references all of the history following the enactment PL 83-820 in support of his contention that CSKT is under federal law and federal jurisdiction. (*Id*. at 1-4.) Lozeau asks this Court to vacate his tribal conviction. (*Id*. at 4.)

This Court has previously addressed the interplay between concurrent state and tribal jurisdiction on the Flathead Reservation. *See e.g., Miller v. Lake County*, Cause No. CV-23-58-M-DLC, Or. at *2 (D. Mont. Aug. 17, 2023); *McElderry v. Lake County*, Cause No. CV-23-46-M-DLC, Or. at * 1-2 (D. Mont. Aug. 17, 2023). Public Law 280, affirmatively granted certain states broad jurisdiction to prosecute state-law offenses committed by or against Indians in Indian country. 18 U.S.C. § 1162; *see also Oklahoma v. Castro-Huerta*, 142 S Ct. 2486, 2499 (2022). Of the seven Indian reservations in Montana, the only tribes to have met the

requirements set forth in PL–280 are the Confederated Salish and Kootenai Tribes (CSKT) of the Flathead Indian Reservation. *In re Est. of Big Spring*, 2011 MT 109, ¶ 47, 360 Mont. 370, 255 P.3d 121.

In 1953, Congress enacted Public Law 280 or "PL 280" to grant certain states criminal jurisdiction over Indians on reservations and to allow civil litigation that had come under tribal or federal court jurisdiction to be handled by state courts. *See* 18 U.S.C. § 1162; 67 Stat. 590. Although Montana was not one of the states originally named in the law, PL 280 § 7 permitted Montana to assume such jurisdiction. *Lozeau v. Anciaux*, 397 Mont. 312, 449 P.3d 830, 832 (2019); *see* 25 U.S.C. § 1321. In 1963, the State voluntarily established a consent procedure with the CSKT. *See* Mont. Code Ann. §§ 2–1–301 to –307. Consistent with this process, the CSKT enacted an ordinance on May 16, 1964, consenting to the State's exercise of concurrent criminal jurisdiction; the ordinance was clarified on May 5, 1965, to include consent to civil jurisdiction. *Lozeau*, 449 P.3d at 833. On June 30, 1964—and then again on October 8, 1965—then-Governor Tim Babcock issued a proclamation giving effect to the State's assumption. *See id;* § 2–1–302. In 1993, the CSKT later withdrew their consent to State jurisdiction over criminal misdemeanors, which was affirmed on September 30, 1994 via proclamation by then-Governor Marc Racicot. *Lozeau*, 449 P.3d at 833; § 2–1–306.

Lozeau seems to suggest that a Montana Highway Patrol Officer can only issue citations for speeding and minors in possession. *See*, (Doc 1-1 at 9.) In support of this argument, Lozeau points to the "Citation Authority" for Non-Tribal Officers outlined in Tribal Resolution 94-123. (*Id*. at 29-30.) This section indeed authorizes state, county, and city officers to exercise authority "limited to that necessary for issuance of citations for violations of the tribal traffic ordinances and ordinances regarding minors in possession of alcohol." (*Id*.) But the same Resolution also provides that non-tribal officers may initiate traffic stops on any vehicle upon reasonable suspicion of criminal activity. (*Id*. at 28.) Following the stop, the non-tribal officer "must then determine the Indian/non-Indian status of the suspect. If the suspect is Indian, as verified by tribal dispatch, the officer may either issue a citation for the alleged violation . . . or, if the officer determines that an arrest is necessary, request response by a tribal officer." (*Id*. at 28-9.)

Based upon the limited information Lozeau has provided about his tribal charges, he has not shown these provisions were violated. While his initial law enforcement contact may have been with a Montana Highway Patrol Officer, as a tribal member, Lozeau was ultimately prosecuted and convicted of Speeding and Obstruction in the CSKT Tribal Court. Under present state law, the Highway Patrol Officer properly exercised jurisdiction over Lozeau's initial traffic stop,

which was then prosecuted along with the misdemeanor obstruction charge, by the tribal court.

In short, Lozeau has failed to establish a federal constitutional violation and/or claim. While the exact nature of his amended claim is unclear, to the extent that he believes his right to due process was somehow violated by his tribal court charges, he cannot convert this issue into one of federal import merely by invoking the specter of a due process violation. *See Langford v. Day*, 110 F. 3d 1380, 1389 (9th Cir. 1996), *cert. denied* 522 U.S. 881 (1997).

As set forth above, the State of Montana has repeatedly affirmed the validity and application of PL 280's jurisdictional principles on the Flathead Reservation. It is not for this Court to reexamine the state court's determination on this state law issue. *See Waddington v. Sarausad,* 555 U.S. 179, 192 n. 5 (2009) ("we have repeatedly held that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions") (citation and internal quotations omitted); *Bradshaw v. Richey,* 546 U.S. 74, 76 (2005) ("a state court's interpretation of state law… binds a federal court sitting in habeas corpus"); *see also Holgerson v. Knowles,* 309 F.3d 1200, 1202 (9th Cir.2002), *cert. denied,* 538 U.S. 1005 (2003) (federal habeas court "bound by California's interpretation of its state law") (citation omitted).

**Certificate of Appealability**

A prisoner seeking federal habeas relief may appeal a district court's dismissal of the petition only after obtaining a certificate of appealability (COA) from a district or circuit judge. A COA may be issued only where a petitioner has made "a substantial showing of the denial of a constitutional right." See 28 U.S.C. § 2253(c)(3). To the extent that a COA is sought, the Court finds that Lozeau has not made a substantial showing of the denial of a constitutional right. Therefore, a certificate of appealability will not be issued in this action. *See* 28 U.S.C. § 2253(c)(2); Fed. R. App. P. 22(b); *Miller-El*, 537 U.S. at 336; *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Based on the foregoing, the Court enters the following:

## ORDER

1. The Petition (Doc. 1) is DISMISSED.

2. The Clerk of Court is directed to enter by separate document a judgment in favor of Respondent and against Petitioner.

3. A certificate of appealability is DENIED.

DATED this 25th day of April, 2025.

_____
Brian Morris, Chief District Judge
United States District Court